## SUPREME COURT—IN BANCO.

### APRIL TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

JOHN H. WOOD *vs.* AFO, ALIAS CHEONG YAN SANG.

LAPSE OF TIME is not a BAR to the penal enforcement of a LABOR CONTRACT, if it result from the servant's own act. (HARTWELL J. DISSENTING.)

OPINION OF ALLEN, C. J.

This case is submitted on an agreed statement of facts.

The defendant entered into a contract to labor for the term of five years from the first of November, 1865, and in the April Term of the Supreme Court, 1868, he was tried, convicted and sentenced to imprisonment for the term of five years, with hard labor, for an assault on the plaintiff with a weapon obviously and imminently dangerous to life, and that he remained in prison in execution of sentence until his discharge on the 7th day of February last.

The counsel for the defendant contends that as the time of the contract, namely, five years, has expired, the defendant's term of service has expired and that he cannot be ordered back to service; and that the only remedy of the plaintiff is an action for damages, and not the remedy given by Sections 24 and 25 of Chapter 78 of the Penal Code.

By the Sections referred to, a person lawfully bound to service, who willfully absents himself from such service, may be arrested by warrant of a magistrate on complaint, and if the complaint is maintained the offender shall be restored to his employer and the Court has a discretion to impose an additional term, not exceeding double the time of absence,

John H. Wood *v.* Afo, alias Cheông Yan Sang.

but such additional term of service shall not extend beyond one year next after the original term of service; and it is further provided that in case the person still refuses to serve, the magistrate may send for him, and if he still refuses the magistrate is authorized to commit such person, and there to remain at hard labor until he consent to serve according to law; and in case of a second desertion he may be committed to prison, there to remain at hard labor for any term not exceeding three months, at the expiration of which he shall be restored to his employer to serve out his original term of service, and any penal term that may be added thereto by said justice.

. In the case of Wood *vs.* Hookina it was contended that the judgment was illegal, because the additional term of service imposed extended beyond one year next after the end of the original term of service. The Court say: "The question which arises in this case is this: When does a contract terminate—at the time specified in its terms, or on its fulfillment? It is a sound legal proposition that a party is not relieved of the responsibilities of his contract until it is fulfilled, unless by agreement.

"Contracts of this character are usually made, conditioned for an advance, and, if this construction of the law should obtain, it would be an inducement to make a contract, receive the advance, ship as a seaman—as the respondent did—remain abroad until the time has expired, and then come into Court and claim an exemption; or, if he preferred not to remain at sea so long at one time, he can do as the respondent did, desert two or three times, and, after short absences, the time will have elapsed. He enjoys his advance, and complies, as it is contended, with his contract. This could not have been the intention of the Legislature— the law never aids a man in a dishonest purpose. We regard this view of the statute as against a sound legal construction, as well as against the authorities."

57

John H. Wood *v.* Afo, alias Cheong Yan Sang.

It has been said that as this point, made and decided in the case, was not necessary to its decision, therefore it should not be regarded as a final adjudication of the Court. It was elaborately argued by counsel and carefully considered by the Court, and decided upon the construction of the statute as made by a majority. There were other considerations of the case upon which the decision was made, but as the point was made and argued, the Court regarded it a duty to make a decision upon it, although, according to usage, it might have been re-argued on exceptions being taken, but as this was not done I regard it as a solemn decision. It may be overruled, but until then it must be held obligatory.

In that case the excess of time was occasioned by desertion, and in this case by absence occasioned by imprisonment under sentence of the Court after conviction for a high crime.

If the position taken by the counsel for the defence is to be sustained, a person may contract for a certain time, receive the advance agreed upon, and then commit a crime and be convicted and sentenced to imprisonment for a term of years, longer than the term of his contract, and on the expiration of his sentence he is freed from the fulfillment of the contract of labor as provided for in sections of the Code referred to.

Desertion is not regarded as a defence to the fulfillment of a contract, *a fortiori*, crime cannot be. Besides the statute expressly declares, that the penal time imposed for continued refusal to return to service, shall not be included within the original term of service, why, then should the penal term for crime be included?

This statute was enacted, of course, in reference to the business of the country. The productions of the country must be gathered and secured, or manufactured when mature, and if neglected they deteriorate and are essentially damaged, and the law in question is designed, to prevent persons from willfully violating their contracts, and doing damage to their

employers. It is in degree as essential to the sugar planter that his employees should remain with him to perform his service as agreed upon, during the crop, as it is for the seamen to remain on the ship during the voyage. A sugar plantation encounters as many adverse winds as a vessel, and is quite as likely to be endangered in crop time as a vessel is on a lee shore, when all hands are required.

In many countries where labor is plenty and heavy advances are not necessary to procure laborers, this law is not necessary. But the Legislature, in their wisdom, passed the law, as applicable to the condition of affairs here.

But it is contended that it is in restraint of one's liberty,— why more so than any other contract which a man makes and honestly fulfills ? If a mechanic undertakes to build a house, it occupies his time and diverts his attention from other pursuits which, perhaps, he might prefer. Every man in public office is under obligation to attend to its duties, and it is often in restraint of his wishes, but no one thinks that it impairs his liberty. The Court is of opinion that it is immoral to fail to fulfill a contract without a reason. The man when he makes the contract understands perfectly well its terms, and receives advantages in advance, and if fully complied with, how is his liberty interfered with ? It was optional whether he made the contract or not, but when he has made it, and receives part payment, it is not true liberty regulated by law for him to abandon his obligations and defraud his employer out of the money advanced. But it is said, bring your action for damages. This may be regarded in most cases as mere mockery. It is to incur a bill of costs without the slightest probability of receiving the amount awarded. There would be some strength in the argument, if the damages could probably be secured, but the Legislature, in their wisdom, considered the necessities of the business done here, as well as the condition, moral and physical, of the people who usually enter into contracts of this character.

In contracts both parties have their rights, and if either fail to fulfill, a wise administration of the law will enforce them.  Nothing tends so much to demoralize a people as a belief that it is optional to fulfill a contract.

The law often makes a public sentiment of great practical value.  If violations of duty and commissions of offences are disregarded and pass unpunished, there will be a constant depreciation of the true sense of moral obligation.

In the law in question, if there are objections in its practical working, the Legislature is the source of reform.  Courts cannot make the laws ; but it is their duty to interpret and enforce them.

HARTWELL, J., dissenting :  It is agreed that the defendant has not performed the five years of labor, and is to be regarded as having willfully absented himself from service without consent of his master.  We have only to say, therefore, whether the statutes concerning penal enforcement of labor contracts apply to this contract after the lapse of time that has occurred.  It is well to bear in mind that the meaning of a contract is found in its terms, and that the statutory remedy for its enforcement in case it be not performed is another thing.  The Legislature do not make contracts, but merely provide remedies to be used if they are not performed.

In Wood *vs.* Hookina, at the January term, 1869, a majority of the Court (ALLEN, C. J., and AUSTIN, J.) took the view that the lapse of time was no bar to the operation of the statute, HARTWELL, J., dissenting.  I should not enter into the discussion of this question if that opinion had been required to be given for the disposition of the case, or if it were the final opinion of a majority of the Court.  But the case was then before the Court as at *nisi prius,* for the first time, and the defendant was discharged because the plaintiff had not kept his part of the contract, so that the views entertained by the Court on points suggested by counsel but not

requisite for the disposition of the case, are not a precedent. I am further induced to state why I still adhere to the view I expressed in that case, for the reason that a principle of law is involved which does not rest on rules of practice or construction which the Court may adopt, but on language in a statute which seems to me to be clear and peremptory. [*See note ad finem.*]

The statute provides that in case of willful desertion from service, the Justice may commit the servant to prison, " there to remain at hard labor not to exceed three months ; and at the expiration of such imprisonment, shall order such offender to be restored to his master to serve him *for the remainder of the original term of service* and any penal term which may have been added thereto ; provided that such additional term of service *shall not extend beyond one year next after the end of the original term of service.*"   Sections 24 and 25, p. 233, Comp. Penal Code.

These words clearly exclude all power to impose additional penal service extending over one year from the end of the original term.   The original term of service expires by lapse of time, whether the service itself be performed or not. The performance of the service and the " end of the original term of service" are not synonymous terms.   If it were meant that the servant should be compelled to serve for a term equal to the time of his absence, the Legislature could easily have said so, instead of saying that he should be compelled to serve "for the remainder of such *original* term of service and any penal term that may be added thereto," which is limited as above, to " one year next after the *end* of the original term of service."

I desire neither to restrict nor enlarge the plain meaning of the statute.   If the Legislature have failed to provide for penal enforcement of labor contracts in cases of desertion continued over one year after the end of the term agreed on ; or if the contract fix the term by dates without stipulating for

the performance of the labor after the expiration of the term, it is not for me to extend either the statute or the contract. The criminality of non-performance of labor contracts on the part of the servant is well appreciated here. But laws for the imprisonment of the person for non-performance of contracts must be construed, if at all, in favor of liberty. I think our statutes fix a period of limitation of the penal enforcement of labor contracts, which ends with the lapse of the original term of service and one year thereafter.

Since preparing the foregoing statement, I have been induced to reconsider it with care, in deference to the opposing views of their Honors the Chief Justice and Second Associate Justice, who think our statutes authorize the penal enforcement of this contract, notwithstanding the lapse of time.

By the 24th Section, p. 233 compiled Penal Code, on the master's complaint of the servant's willful desertion, the Justice "shall order such offender to be restored to his master, and he shall be compelled to serve not to exceed double the time of his absence, * * provided always that such additional term of service shall not extend beyond one year next after the expiration of the original term of service." By the 25th Section, "If any such person shall refuse to serve according to the provision of the last section, or the terms of his contract, * * and if such refusal be persisted in," the Court is authorized "to commit such person to prison, there to remain at hard labor until he will consent to serve according to law;" and on the servant returning to service and again willfully deserting, the Court is "authorized to commit such person to prison, there to remain at hard labor for any term not to exceed three months; and at the expiration of such imprisonment, such Justice shall order such offender to be restored to his master, to serve him for the remainder of such original term of service and any penal term that may have been added thereto by such Justice."

John H. Wood *v.* Afo, alias Cheong Yan Sang.

It is clear that if the original term of service shall have expired when the servant is brought before the Justice under the 24th Section, the labor thereafter ordered is com-. pulsory labor, or a penal sentence in the nature of compensation for a breach of contract, and is additional to the original term in the sense that it comes after the end of that term, and therefore by the statute cannot be extended over the year next ensuing the end of such original term.

The provision in the 25th Section for serving "according to law" or "according to the provisions of the last section," does not, as it strikes me, mean the same with serving "according to the terms of the contract." I distinguish between service under the contract within the term agreed on, and service after that term required to be performed as a penalty for the violation of the contract.

It seems to me that the Act of July 29th, 1872, in relation to labor contracts sustains this view, in its third section, viz. : "No person bound by contract to serve another shall be held or compelled to work for any period of time *beyond the date when the contract shall by its terms expire* in liquidation of any debt or advance made to said laborer during the term agreed for," &c. The penal labor meant in this Act is, to be sure, imposed for violation of an obligation to pay a debt, but the expressions "beyond the date when the contract shall by its terms expire," and "after the end of the original term of service," seem to me to be alike in fixing a limit by time alone.

Moreover, a contract to be binding at all, must be mutually binding. After the expiration of the original term of service, the master is under no obligation to take the servant back, although entitled to compensation for loss of service willfully caused by the servant during the term. Therefore, by the law of contracts, the master does not obtain the service after the term has expired, by virtue of an existing contract, but merely by virtue of the penal statute applicable

to violation of the contract. The labor then performed is coercive, on the decree of the Court, and may be avoided on making "satisfaction to the master for the loss and injury sustained by such absence."

In any aspect of the case, I find myself unable to assent to the view of the majority of the Court, inasmuch as the limitation of penal or coercive service seems to me to be fixed by law.

Statutes fixing a period beyond which no suit can be brought on a contract, as for instance a promissory note, do not assume that the contract is performed. But such statutes are commonly pleaded in defence. I think the limitation in our labor laws is a like defence.

"An extra-judicial opinion may be an opinion given on a question that it is unnecessary to decide in the case where it was given; which the case or the circumstances of the case did not call for; that was not essential to the decision of the case; which it was unnecessary to give; an opinion given in Court if not necessary to the judgment given of record, but that it might as well have been given if no such, or a contrary opinion had been broached, is no judicial opinion, no more than a *gratis dictum*." These definitions are collected from the decisions of the first judges of England, in Ram's work on Legal Judgment, ch. 5.

WIDEMANN, J.: "Where the language of an instrument is neither uncertain nor ambiguous it is to be expounded according to its apparent import: and is not to be warped from the ordinary meaning of its terms." "Where the words are clear and definite, they must be understood according to their grammatical construction and in their ordinary meaning." Story on Contracts, §639.

"As every contract derives its effect from the intention of the parties, that intention, as expressed or inferred, must be the ground and principle of every decision respecting its operation and extent, and the grand object of consideration in

every question with regard to its construction." 2 Pothier on Obligations, pp. 30 and 31.

"If the language of an agreement is not attended with any real ambiguity and uncertainty, and is not controlled or affected by an established usage or general principles of law, it is not reasonable to recur to an arbitrary construction founded upon an uncertain construction of the intention of the contracting parties, or upon the course which they would probably have pursued if an accidental contingency had been foreseen." *Ibid,* p. 32.

The second clause of the contract submitted sets forth, that the said ...... Afo shall and will perform such labor as ...... may direct, during the term of five years, (Sundays, etc., etc., excepted,) to be computed from the date of his entering upon his duty. The contract is dated 10th July, 1865, and was assigned by the Minister of Interior on the 1st of November of the same year, and it is probable that Afo entered upon his duty on the 2d of November, 1865.

I am quite clear that the five years stipulated in the contract to be computed from the date of entering upon his duties meant the five years from November, 1865, to November, 1870, and no other.

The submission is under Section 1419 of the Civil Code, (Pen. Code, Chap. 78, Sect. 24,) and that section provides that "If any man lawfully bound to service, shall willfully absent himself, etc., etc., the justice shall order such offender to be restored to his master, and he shall be compelled to serve not to exceed double the time of his absence, in the discretion of the Court, etc., etc., provided, always that such additional term of service shall not extend beyond one year next after the end of the original term of service."

No additional service can be imposed in this case, and I am not sure that under the wording of this section the defendant could be compelled at all to work out the unfinished term of the original contract. The demand in this case is

58

for the original term, and additional service is especially disclaimed.

"The effect of the obligation which a person contracts to do any act, is that he ought to do what he has engaged, and that if he does not, after having been placed *en demeure*, he ought to be condemned in damages to the person in whose favor he is obliged," etc.   2 Pothier on Obligations, §146. This is the universal rule, and there can be no doubt that in this case an action for damages would lie.   The defendant is legally as well as morally bound to fulfill his contract, or to bear the consequences of a breach.   The plaintiff has a right to demand from this Court a judgment in his favor.   The defendant admits this, but contends that specific performance can not be enforced.   Section 1420 of the Civil Code sets forth that:   "If any such person shall refuse to serve according to the provisions of the last section, or the terms of his contract, his master may apply to any district or police justice ...... who shall be authorized ...... to commit such person to prison ...... until he will consent to serve according to law."

Whatever doubts I entertained of the applicability of this section (the submission being in terms under Section 1419,) were removed by the opinion of both the Chief Justice and the First Associate Justice, that a decision should be rendered in this case under this section as well as the preceding.

I am therefore of opinion that the defendant refusing to serve according to the terms of his contract, should, if he persists in such refusal, be sent to prison, there to remain, at hard labor, until he will consent to serve according to law.

The 1419th Section provides for an additional term of service, by way of fine, and provides that such additional term, imposed under it, shall not extend beyond one year next after the original term of service.   The limitation of the additional term does not imply even the limitation of the original term.   And if I consider the "reason and spirit of

the section, and the cause which induced the Legislature to enact it," (C. C., Section 12,) I am forced to the conclusion that the Legislature, in said 1419th Section, did not intend to limit the *original* term of a contract. To hold the contrary would be equivalent to saying that any one under a contract in which time is a consideration, might avoid his contract by absenting himself. This it seems to me is the very opposite to what the Legislature intended by enacting the Master and Servant Act.

L. McCully for plaintiff.

E. Preston for defendant.

Honolulu, April 2d, 1873.